### No. 2153
### Second Circuit

#### SHARP v. NABORS

(April 8, 1927. Opinion and Decree.)
(May 13, 1927. Rehearing Refused.)

---

*(Syllabus by the Court)*

1. Louisiana Digest—Appeal—Par. 625.
The finding of fact by the trial court will not be disturbed on appeal unless manifestly erroneous.

Appeal from the Twelfth Judicial District Court of Louisiana, Parish of Desoto. Hon. John H. Boone, Judge.

Action by F. T. Sharp against W. C. Nabors.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

S. D. Ponder, of Many, attorney for plaintiff, appellee.

Lee & Bell, of Mansfield, attorneys for defendant, appellant.

## STATEMENT OF THE CASE

REYNOLDS, J. Plaintiff, F. T. Sharp, sues the defendant, W. C. Nabors, to recover the sum of $1271.25, damages alleged to have been done to plaintiff's automobile in a collision between it and a trailer attached to a motor truck owned by defendant and being operated by his chauffeur.

Plaintiff alleged that the proximate cause of the accident was reckless driving by defendant chauffeur and the motor truck being on the wrong side of the highway and moving at a high rate of speed.

Defendant denied liability and alleged that the proximate cause of the accident was reckless driving of plaintiff's automobile and its being on the wrong side of the road, and defendant reconvened against plaintiff for $68.55 damages alleged to have been done to his trailer.

On these issues the case was tried and there was judgment in favor of the plaintiff for $900.00 and rejecting defendant's reconventional demand.

A new trial was granted the defendant and on the second trial judgment was rendered in favor of the plaintiff for $500.00.

Defendant appealed. The plaintiff has answered the appeal and asks that the judgment be increased to the amount asked for in his petition.

## OPINION

The first question to be decided in this case is, whose fault was the proximate cause of the accident.

Plaintiff, F. T. Sharp, testified, pages 4, 5, 12, 13.

"Q. Well, state to the court how fast you were running when you approached the truck.

"A. Not over fifteen miles an hour.

"Q. What part of the road were you on?

"A. On the right—when I first saw it.

"Q. Yes?

"A. I was about in the middle of the road then.

"Q. What did you do when you saw it approaching?

"A. I got on the right hand side as far as I could get without getting into the ditch.

"Q. What else?

"A. I blew my horn and continued to blow.

"Q. What did the negro who was operating the truck do, if anything?

"A. He didn't do anything. He stayed right in the middle of the road.

"Q. Until when?

"A. Until he was up even with me, and then he tried to cut out, but it was too late.

"Q. Got up even with you?

"A. His truck was even with me, and when· he went to get out the front end of the trailer crossed the road right into me.

"Q. What do you mean by crossing the road?

"A. It left the middle of the road and came over on my side.

"Q. Did he at any time at all turn his truck to the right when you turned to his right?

"A. No, sir; not until he got even with me.

"Q. Not until when?

"A. Not until he got even with me. His truck was even with me.

"Q. What was the effect of his turning the truck then?

"A. The effect was, when he turned his truck, his trailer run right over and hooked in my front wheel and broke my steering

gear, shot me across the road to the opposite side and turned me over.

* * *

"Q. Ask you again to describe just what you did as you approached the truck and just what the truck driver did as he approached you?

"A. When I saw the truck coming, I got out on the right hand side as far as I could get without going into the ditch.

* * *

"Q. All right, go ahead with your description.

"A. And when I saw the car coming, I got on the right hand side as far as I could without going into the ditch and he didn't move from where he was—just kept going along in the same place. Just as he got even with me, he cut out and the trailer came into me.

"Q. Which way did he cut?

"A. To the right.

"Q. You wer already on your right?

"A. I had already gone as far as I could.

"Q. You described the action of the trailer to Mr. Ponder—I will ask you to describe it over again.

"A. When he cut to the right, that threw the trailer right into me."

Mrs. F. T. Sharp testified, page 23.

"Q. How far was the truck from you when you first saw it before the accident occurred—how far away?

"A. When we first saw it?

"Q. Yes, Ma'm.

"A. About fifty yards; something like that.

"Q. Well, when you saw the truck approaching, what did your husband do to his car

"A. Well, he blew the horn and he turned his car over to the right and went to the ditch.

"Q. Turned to the right?

"A. Yes, sir.

"Q. What did the truck do?

"A. The truck came on ahead.

"Q. Came on? Well, where was the truck running at the time—what part of the road?

"A. Looked like more on our side than anywhere else.

"Q. When did it turn to the right, if it did?

"A. It didn't turn until he got just even with us. His truck was even with us.

"Q. The truck was even with you?

"A. Yes, the truck part.

"Q. Describe to the court what was done—what the negro did with the truck as it got even with you and what occurred?

"A. Well, he turned to his right then when he got even with us and the trailer swung over toward us and hit our car.

"Q. What did he strike?

"A. Hit our front wheel—hit the front wheels.

"Q. Then what occurred when it hit?

"A. It went over to the left—to our left into the ditch. Went over to the ditch.

"Q. Did it go on the opposite side or the same side of the road?

"A. From where we were?

"Q. Yes, ma'm; did it go across the road?

"A. Yes, it went across the road.

"Q. What did it do when it got there?

"A. Turned over and caught fire."

Mrs. J. R. Lynch testified, page 27.

"Q. You were in the car at the time the trailer of Mr. Nabors' truck ran into Mr. Sharp's car?

"A. I was; yes, sir.

"Q. Well, how far were you from the truck at the time you first observed it?

"A. About fifty yards.

"Q. Well, when you were approaching the truck, what did Mr. Sharp do with regard to his car?

"A. He turned to the right and blew.

"Q. What did the negro do with the truck?

"A. He came as close to us as he could before he turned out.

"Q. What did the trailer do when he turned the truck to the right; which way did the trailer go?

"A. It struck the front wheel of our car.

"Q. What effect did it have on the front wheel?

"A. It knocked the gear out of the car.

"Q. What other effect did it have?

"A. It caused us to run on down the road and go into the ditch."

The only other eye-witness to the accident who testified in the case was Noble Williams, a colored man, and the person

who drove defendant's truck with the trailer attached; pages 82, 83, 85.

"Q. Now, on the day of the accident, when did you first see the car that ran into you or that you ran into?
"A. When I seen it, it was on top of the hill coming over the hill.
"Q. He was going down the hill towards you?
"A. Yes, sir.
"Q. And you were going uphill?
"A. Yes, sir.
"Q. He was coming down hill?
"A. Yes, sir.
"Q. What did you do?
"A. I pulled out of the road.
"Q. Did you get out of the road?
"A. Yes, sir; I got out.
"Q. How far did you get?
"A. I don't know exactly; I know I got out of the road.
"Q. What happened?
"A. He ran into me.
"Q. What?
"A. He ran into me.

* * *

"Q. What part of the road were you on?
"A. On the right side.
"Q. On the right side which way?
"A. Coming to town.
"Q. Where?
"A. Coming to Mansfield.
"Q. You were on the right side of the road going toward Mansfield?
"A. Yes, sir."
"Q. What side was Mr. Sharp on?
"A. He was on the right side going to Sodus.
"Q. Was he on the same side you were on?
"A. No, sir.
"Q. He was on one side of the road and you were on the other?
"A. Yes, sir.

The width of the road at the scene of the accident, as established by the testimony of the witness Willard Benson, page 104, is from twenty-four to forty feet, and if the testimony of the driver of defendant's truck were true the accident could not have happened.

After carefully reading all the evidence in the case we have reached the conclusion that the accident was caused by the jolting of the trailer attached to defendant's motor truck into the front wheel of plaintiff's automobile and that this jolting was caused by the negligent operation of the truck and trailer.

This appears to have been the conclusion of the trial judge, who heard and observed the witnesses testify and who appears to have accepted the version of Mr. and Mrs. Sharp and Mrs. Lynch as to the cause of the accident.

This brings us to the question of damages, and while the evidence on that point is conflicting, we are unable to say that the award of the trial court is not correct.

The evidence shows that plaintiff expended for repairs of the damage done to his car by the accident $329.25, and it further shows that the body of plaintiff's car was broken and its top injured and that it would cost $600.00 to replace the damaged body and top with a new body and top.

From all the evidence we are of the opinion that the allowance of $500.00 damages by the trial court was not excessive.

Plaintiff contends for a larger amount of damages, but he has not furnished us with an itemized statement showing in detail the amount of damage sustained by him beyond the amount actually paid out for repairs; and the evidence does not enable us to say that the amount awarded by the District Judge does not do substantial justice between the parties.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be affirmed.